IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2022

**GARRIC DORSEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
Nos. 19-05184, C1907458  J. Robert Carter, Jr., Judge**

_____

**No. W2021-01135-CCA-R3-PC**

_____

The Shelby County Grand Jury indicted Petitioner, Garric Dorsey, for one count of Class B aggravated sexual battery, one count of Class C solicitation of a minor, and one count of Class B felony sexual exploitation of a minor.  Although Petitioner's criminal history was that of a Range II offender, Petitioner entered a guilty plea as a Range III offender to one count of attempted aggravated sexual battery and one count of solicitation of a minor, both Class C felonies.  The State dismissed the count of sexual exploitation of a minor.  Pursuant to the plea agreement, the trial court sentenced Petitioner to eleven years' incarceration on both counts and ran the sentences concurrently.  Petitioner filed a post-conviction petition, which the post-conviction court denied following a hearing.  On appeal, Petitioner argues that he was denied the effective assistance of counsel and that his due process rights were violated.  After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Roberto Garcia, Jr., Memphis, Tennessee, for the appellant, Garric Dorsey.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Brad Reasonover, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural History

*Guilty Plea Submission Hearing*

The following was presented as the factual basis for Petitioner's guilty plea:

Had this case gone to trial, the State's proof would have shown that on March 27th of 2019, Memphis Police Department received a complaint from the victim's mother [] that her daughter had been text messaging with [Petitioner] in this case and the contents of that text message conversation were sexually explicit.

She was referred to the internet crimes against children department and the cell phone was extracted and examined. Investigators did ultimately discover a conversation between the victim in this case[,] who was 12 years old at the time[,] and [Petitioner]. The conversation included [Petitioner] requesting sexually explicit photographs of the 12-year-old victim.

Additionally on May 3, 2019, the victim was interviewed at the Child Advocacy Center. She did disclose that she had in fact sent a sexually explicit photograph to [Petitioner] in this case. She also disclosed that at some point she had been texting with [Petitioner] here in Shelby County and [Petitioner] had come to her grandfather's house while she was there at night and had entered the room where she was sleeping, gotten under the covers and pressed up against her buttocks. She asked him what he was doing and at that point she wrapped herself in the covers and he left.

All of these events did occur here in Shelby County.

During the plea colloquy, the trial court explained the plea agreement to Petitioner:

THE COURT: If you were to go to trial and you were -- I know what your criminal history is but they tell me it's enough to make you [R]ange [II] at least.[1] Normally [R]ange [II] for a C [felony], which is what you're pleading to, would be from six to ten years. You're agreeing to [eleven] years. And the reason for that is that's still a lot less than if you were convicted as charged. You know, the B felony if it's non-parolable if you

---

[1] The written plea agreement indicates that Petitioner pled guilty as a Range III multiple offender.

were [R]ange [II] in that, it would be [twelve] to [twenty] years and they said it's at 100 percent but you have to serve at least [eighty-five] percent of it.

So you can accept, you know, an [eleven]-year sentence which is slightly out of your normal range if you're doing that because you want to avoid a much greater possible offense if you were convicted. But I just need to make sure it's your agreement that you're accepting [eleven] years at [thirty-five] percent on this.

[PETITIONER]: Yes.

THE COURT: Is that right?

[PETITIONER]: Yes, sir.

THE COURT: And you and your attorney talked about, you know, if you went to trial and were convicted, it would be significantly more.

[PETITIONER]: Yes, sir.

THE COURT: So you're agreeing in order not to go to trial and in order to have a definite sentence that you have agreed to, it's [eleven] years at [thirty-five] percent. Is that right?

[PETITIONER]: Yes, sir.

THE COURT: . . . And you've got to register for the sex offender registry and the community supervision [] once you're released. Do you understand?

[PETITIONER]: Yes, sir.

Petitioner agreed that he was entering the plea freely and voluntarily and that no one threatened him. The trial court accepted the plea and sentenced Petitioner pursuant to the plea agreement.

*Post-Conviction Hearing*

Petitioner filed a timely pro se petition for post-conviction relief and an amended petition through counsel. At the post-conviction hearing, Petitioner testified that he pled guilty to one count of attempted aggravated sexual battery and one count of solicitation of

a minor, both Class C felonies. Petitioner said that he retained trial counsel and met with him one time. He stated that trial counsel never reviewed the charges, discovery, sentencing ranges, or possible defenses with him. Petitioner explained that he had two prior convictions and that he should have been sentenced as a Range II offender. He said that the plea agreement listed him as a Range III offender.

Petitioner stated that, when he was able to review discovery with post-conviction counsel, he saw the text messages and the photographic lineup. He explained that, based on the discovery, he would not have pled guilty and would have taken his case to trial.[2] Petitioner stated that he did not know at the time of his plea that he would be on community supervision for life. He said that he believed he "was going to have to register for ten years."

Petitioner testified that, prior to the guilty plea submission hearing, trial counsel told him "outside the court in the room out there he said that the prosecutor or DA or something offered me ten years and I got one year, they putting one year on top of it for a contempt of court because I came to court two days late." He explained, "I had got my court date mixed up, and I came two days late and he said they trying to offer me two years for coming to court late but he talked them down to one, and that's how I got another year." Petitioner said that he was not formally charged with failure to appear.

On cross-examination, Petitioner said that trial counsel explained which documents were in discovery from the State but that Petitioner did not get to examine those documents. Petitioner stated that he attempted to speak with trial counsel "every two weeks" but that trial counsel "always brushed [him] off." He said, "I told [trial counsel] I wanted to go to trial because I didn't do the sexual battery and . . . the sexual exploitation[.]" Petitioner stated that trial counsel told him that he could not plead "guilty" to some charges and plead "not guilty" to other charges.

Petitioner stated that he knew how to read and write but that he did not read the plea agreement before he signed it. He recalled that the trial court talked about his sentence being "out of range" but said that he did not understand. He agreed that, at the guilty plea submission hearing, he was under oath, that he was not under the influence, that the trial court explained his rights, that he said he did not want a trial, and that he agreed he had discussed the plea agreement with trial counsel.

Trial counsel testified that he had practiced criminal defense for thirty-six years and that he knew Petitioner since he was a child because trial counsel dated Petitioner's aunt.

---

[2] The text messages and photographic lineup were not presented at the post-conviction hearing and do not appear in the record.

Trial counsel explained that, because he had known Petitioner all his life, Petitioner "could meet [with trial counsel] any time, he knew that." He said that he reviewed discovery with Petitioner "several times" but that the discovery was "not extensive." Trial counsel explained that Petitioner was indicted for aggravated sexual battery, a Class B felony, and that Petitioner would have had to serve the sentence on the charged offense at 100 percent if convicted. Therefore, the agreement to the Class C felony, attempted aggravated sexual battery, dropped Petitioner's release eligibility to thirty-five percent. He explained, "[H]e was getting a deal doing eleven years at thirty-five percent, so it basically saved him a lot of time."

On cross-examination, trial counsel stated that he had tried "numerous" sex crimes cases and that he understood what it took to be successful at trial. He explained, "[W]hat I would have done[,] I would have been looking at a way to look at these text messages in a way that really was not sexual, didn't have any sexual connotation to them. And all of them did. I mean, sometimes they were pretty explicit." Trial counsel recalled that he explained to Petitioner the possible consequences of going to trial and the likelihood of conviction.

*Order Denying Post-Conviction Relief*

The post-conviction court denied relief in a written order. It noted trial counsel's testimony that the text messages were incriminating evidence and that the context "made it clear that Petitioner and the victim were the source[s] of the texts." It found that the plea decision "was that of Petitioner[,] according to counsel. It was a matter of eleven (11) [years] at [thirty-five percent] verses at least twelve (12) [years] at 100 [percent]."

The post-conviction court concluded:

> Petitioner claims that his attorney did not spend ample time with him preparing for trial. During this time, Petitioner was out on bond. Petitioner agrees that he entered the guilty plea, but now just feels like he wishes he could go to trial.
>
> Counsel testified, and the guilty plea colloquy demonstrates that this plea was entered knowingly and voluntarily with full knowledge of the rights he was waiving.
>
> A post-conviction petition is not available to a person who simply "reconsiders" their decision. In this case, there is no proof of ineffective representation or of an involuntary guilty plea.

- 5 -

Petitioner now timely appeals.

## Analysis

Petitioner argues that he was denied the effective assistance of counsel and that the trial court violated his due process rights by sentencing him for a crime for which he was not charged.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the trial court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

### *Ineffective Assistance of Counsel*

Petitioner argues that he was denied the effective assistance of counsel because trial counsel (1) failed to inform Petitioner of the nature of the charges against him, his sentencing ranges, and that Petitioner would have to be on community supervision for life; (2) failed to properly advise Petitioner regarding the presumption of innocence; and (3) failed to review discovery with Petitioner. He contends that, were it not for trial counsel's deficiencies, he would have insisted on going to trial.

The State responds that trial counsel was not deficient. It argues (1) that trial counsel explained the charges against Petitioner, the likelihood of conviction, the consequences of conviction, and the terms of the State's plea offer; (2) that Petitioner waived his claim regarding the presumption of innocence by raising it for the first time on appeal; and (3) that trial counsel reviewed discovery with Petitioner. It contends that the post-conviction court impliedly discredited Petitioner's testimony with its finding that Petitioner failed to prove his claim of ineffective assistance of counsel. The State asserts that Petitioner failed

to establish that anything in discovery would have benefitted Petitioner or caused him to proceed to trial.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764,

at *4 (Tenn. Ct. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Initially, we note that Petitioner raises for the first time on appeal his claim that trial counsel was ineffective for failing to explain the presumption of innocence. "'[I]ssues not addressed in the post-conviction court will generally not be addressed on appeal.'" *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (quoting *Lane v. State*, 316 S.W.3d 555, 561-62 (Tenn. 2010)); Tenn. Code Ann. § 40-30-106(g) (2021). Moreover, our supreme court has held that "the plain error rule . . . may not be applied in post-conviction proceedings to grounds that would otherwise be deemed waived or previously determined." *Id*. (internal quotations omitted). This issue is waived.

Next, the post-conviction court impliedly credited the testimony of trial counsel and discredited the testimony of Petitioner when it ruled that Petitioner failed to establish that he was denied the effective assistance of counsel. *See Michael Clark v. State*, No. W2016-01013-CCA-R3-PC, 2017 WL 1855179, at *15 (Tenn. Crim. App. May 5, 2017) ("Although the post-conviction court did not make specific credibility findings, the post-conviction court impliedly credited the testimony of second trial counsel based on its factual findings."). Petitioner signed the plea agreement, which stated that he was pleading guilty as a Range III offender to attempted aggravated sexual battery and solicitation of a minor. Petitioner's charges were likewise explained at the guilty plea submission hearing. Moreover, Petitioner testified at the post-conviction hearing, "I told [trial counsel] I wanted to go to trial because I didn't do the sexual battery and . . . the sexual exploitation[.]" In its written order, the post-conviction court noted, "Petitioner seems to blame his attorney for not arranging for him to plead guilty to some charges and go to trial on others." Clearly, Petitioner knew what he was charged with prior to pleading guilty because he testified that he wanted to plead "guilty" to some charges and "not guilty" to others.

Regarding Petitioner's sentencing ranges and community supervision, the trial court explained to Petitioner the sentence pursuant to the plea agreement, and Petitioner agreed to it, both verbally and in writing. The trial court also explained at the guilty plea submission hearing that Petitioner would have to register as a sex offender and be on community supervision following his sentence. Trial counsel testified that he explained to Petitioner the likelihood of conviction and the consequences of conviction. Petitioner claims that trial counsel failed to explain the sentencing ranges or community supervision, but the post-conviction court impliedly discredited his testimony. *Id*.

Finally, trial counsel testified that he went over the text messages in discovery with Petitioner "several times." Further, none of the text messages appear in the record, and Petitioner failed to establish how the text messages would have benefitted him or caused him to insist on going to trial. *See Jerome S. Barrett v. State*, No. M2015-01161-CCA-R3-PC, 2016 WL 4410649, at *5 (Tenn. Crim. App. Aug. 18, 2016) (finding no deficient performance or prejudice because the petitioner failed to introduce any evidence at the post-conviction hearing that supported his claim of failure to investigate and offered no explanation as to how he was prejudiced by the absence of such evidence), *perm. app. denied* (Tenn. Dec. 14, 2016). Petitioner has not established deficiency or prejudice, and the post-conviction court properly determined that Petitioner was not denied the effective assistance of counsel. Petitioner is not entitled to relief.

*Due Process and Sentencing*

Petitioner argues that the trial court violated his due process rights by increasing his sentence by one year as a result of his failure to appear at a court date. Petitioner contends that he was never charged with "failure to appear;" therefore, adding a year to his sentence for failure to appear violated his rights.

The State responds that Petitioner has waived this issue because Petitioner offered no authority that his sentence violated his due process rights. Alternatively, the State argues that Petitioner voluntarily and knowingly agreed to the sentence with his negotiated guilty plea; thus, his sentence is proper.

Here, although Petitioner's criminal history qualified him as a Range II offender, he pled guilty in count one as a Range III offender to Class C felony attempted aggravated sexual battery, rather than the indicted charge, Class B felony aggravated sexual battery. A Range III sentence for a Class C felony is ten to fifteen years, and a Range II sentence for a Class B felony is twelve to twenty years. Tenn. Code Ann. § 40-35-112(b)(2), (c)(3) (2021).

To the extent that Petitioner is arguing that his due process rights were violated by the sentence in the plea agreement, he must show that his guilty plea was unknowing and involuntary. *Robert Smith v. State*, No. W2021-00890-CCA-R3-PC, 2022 WL 2092990, at *3 (Tenn. Crim. App. June 10, 2022) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)) ("To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily."). "[A] knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Hicks v. State*, 945 S.W.2d 706, 709 (Tenn. 1997); *see also State v. Mahler*, 735 S.W.2d 226, 228 (Tenn. 1987) (holding that any question as to a petitioner's classification or release eligibility is waived by a guilty plea). However, Petitioner does not assert that his plea was unknowing

or involuntary, and the post-conviction court found that his plea was knowing and voluntary. In fact, Petitioner testified at the post-conviction hearing that he knew when he pled guilty that the agreement involved a sentence of eleven years, and the guilty plea submission hearing transcript demonstrates that the trial court explained the sentence to Petitioner. Instead, Petitioner appears to argue that the trial court violated his due process rights because it, in essence, "convicted" him of a crime he was not charged with and then increased his sentence based on that conviction. There is no judgment form or other evidence in the record indicating that Petitioner was convicted of the crime of "failure to appear." Thus, Petitioner's "due process" argument is without merit.

To the extent that Petitioner is arguing that the trial court abused its discretion in imposing an "out-of-range" sentence, this too is without merit. Petitioner's eleven-year sentences for the two Class C felonies fit squarely within the sentencing range of ten to fifteen years for a Range III offender. Tenn. Code Ann. § 40-35-112(c)(3) (2021). Thus, his sentences fell on the low end of the range for the conviction offenses, and Petitioner agreed to these sentences at his guilty plea submission hearing, which was to his benefit. See *McKinley v. State*, 910 S.W.2d 465, 466-68 (Tenn. Crim. App. 1995) (holding that a petitioner waived any discrepancy in range classification and release eligibility when he pled guilty to lesser charges in a higher range classification). Petitioner is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 10 -